**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THERESA A. GREINEDER** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 13-2376** |
| | : | |
| **MASONIC HOMES OF THE R.W.** | : | |
| **GRAND LODGE, F&AM OF** | : | |
| **PENNSYLVANIA d/b/a MASONIC** | : | |
| **VILLAGES, et al.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

**Goldberg, J.**                                                                                           **April 23, 2014**

### <u>MEMORANDUM OPINION</u>

This case involves multiple claims of employment discrimination brought after Plaintiff, Theresa Greineder, was terminated from her position as a nurse with Defendant, Masonic Homes of the Grand Lodge, F&AM of Pennsylvania d/b/a Masonic Villages ("Masonic"). Plaintiff claims that she was fired by Defendant Kristen Deck, a representative of Masonic, after taking leave under the Family and Medical Leave Act ("FMLA") in order to undergo back surgery. Plaintiff alleges four counts of discrimination in violation of the Americans with Disabilities Act ("ADA") (Counts I, III, V, & VI), four counts of discrimination in violation of the Pennsylvania Human Relations Act ("PHRA") (Counts II, IV, VII, & XI[1]), and one count of retaliation in violation of the FMLA (Count VIII).

---

[1] The ninth count is incorrectly numbered as "Count XI" instead of "Count IX." To avoid confusion, we will refer to it as it was labeled in the amended complaint.

Before the Court is Defendants' partial motion to dismiss the amended complaint. Defendants have moved to dismiss Counts VII, VIII, XI and the portion of Count V seeking compensatory and punitive damages. For the reasons that follow, the motion will be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff began working for Defendant Masonic as a licensed practical nurse ("LPN") in 2002. In March of 2011, Plaintiff informed Masonic that she needed to undergo back surgery for an injury she sustained working at another job. Masonic granted her leave, and Plaintiff underwent back surgery on April 6, 2011. Plaintiff returned to work on June 10, 2011. (Am. Compl. ¶¶ 17, 22-25.)

Plaintiff's physician advised her that she could return to work, provided that she did not lift more than eleven to twenty-five pounds. Masonic's physician also evaluated Plaintiff, and agreed with that job restriction. Plaintiff asserts that the restriction did not in any way affect her ability to perform the position, and that her duties were therefore not modified. Plaintiff continued to experience back pain, however, and in September 2011, her physician lowered the lifting restriction to six to ten pounds. Once again, Plaintiff argues that she was able to execute the essential functions of her job despite the more limited lifting restriction. (Id. at ¶¶ 26-27, 31, 33, 35, 39.)

At or around the time that Plaintiff told Masonic that she required a more significant lifting restriction, Plaintiff alleges that she was informed of Masonic's policy of terminating

---

[2] When deciding a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assume the veracity of all well-pleaded facts found in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). We assume that all facts found in the amended complaint are true, and to the extent any facts from outside the amended complaint are recited, they are included for informational purposes only. See Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 225 n.1 (3d Cir. 2013).

employees who remained on restricted duty for longer than six months. Plaintiff inquired whether the policy applied to her because the restriction did not limit her job performance. She also asked that she be granted an exception to the policy, and requested a job accommodation or transfer to another position. Plaintiff alleges that all of her requests were denied. Plaintiff claims that on December 7, 2011, she was told by Defendant Deck that she would be fired. According to Plaintiff, Deck said that her lifting restriction and physical condition made her a "liability." Plaintiff asserts that she was officially fired for exhausting the six-month restricted-duty policy on December 9, 2011. (Id. at ¶¶ 40-41, 44-46.)

Defendants have filed a partial motion to dismiss Plaintiff's amended complaint. The motion is now fully briefed and ready for disposition.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully."  Id.  To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

III.    **ANALYSIS**

The ADA, PHRA and FMLA all prohibit employers from retaliating against employees who avail themselves of the protections offered by the Acts.   42 U.S.C. § 12203; 43 P.S. § 955(d); 29 U.S.C § 2615.   The PHRA extends liability to any representative of the employer who aids or abets in the discrimination.   43 P.S. § 955(e).   Defendants move to dismiss 1) the portion of the ADA retaliation claim that seeks compensatory damages; 2) an alleged hostile work environment claim against Masonic; 3) the FMLA retaliation claim against Masonic; and 4) the count against Defendants John Doe 1-5 for aiding and abetting the discrimination in violation of the PHRA.   We will address each of these arguments in turn.

### A. Compensatory and Punitive Damages

In Count V of the amended complaint, Plaintiff alleges that Masonic violated the ADA's anti-retaliation provision by labeling her a "liability" and then firing her when she returned to work after undergoing back surgery.   Plaintiff is seeking punitive and compensatory damages,[3] among other remedies.   (Am. Compl. ¶¶ 75-77.)   Defendants have moved to dismiss the request for compensatory damages, claiming that they are not available under the ADA's antiretaliation provision.[4]   The United States Court of Appeals for the Third Circuit has never addressed this issue, and other Circuits disagree on its resolution.   Compare Kramer v. Banc of America Securities, LLC, 355 F.3d 961, 965 (7th Cir. 2004) (finding that punitive and compensatory damages are not available for ADA retaliation claims) and Alvarado v. Cajun Operating Co., 588

---

[3]   Compensatory damages include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages."   42 U.S.C. § 1981a(a)(2) (2006).

[4] Although not included in Defendants' motion, we will address both punitive and compensatory damages here.   We will strike the prayer for punitive damages pursuant to Federal Rule of Civil Procedure 12(f)(1).   See Acosta v. Hovensa, LLC, 2010 WL 695963, at *11 n.7 (D.V.I Feb. 23, 2010) (finding that a court may strike claims for punitive damages sua sponte).

F.3d 1261, 1265  (9th Cir. 2009) (same) with Foster v. Warner Entertainment Co., 250 F.3d 1189 (8th Cir. 2001) (affirming without discussion the award of punitive and compensatory damages in an ADA retaliation claim) and Baker v. Windsor Republic Doors, 635 F. Supp. 2d 765, 771 (W.D. Tenn. 2009) (holding that the Civil Rights Act of 1991 extended compensatory damages to ADA retaliation claims).

Two statutory schemes are relevant to this analysis.  First, the ADA provides remedies for victims of retaliation by incorporating the remedial provisions set forth in Title VII.  See 42 U.S.C. §§ 12203(c), 12117.  Second, the Civil Rights Act of 1991 expanded the availability of punitive and compensatory damages for ADA discrimination claims.  Id. at § 1981a(a)(2).  For the reasons explained below, however, we find that neither scheme permits a plaintiff alleging an ADA retaliation claim to recover compensatory or punitive damages.

1.  Whether the ADA Permits Plaintiffs to Recover Compensatory or Punitive Damages for Retaliation Claims.

The ADA prohibits retaliation against an employee who has opposed his or her employer's discriminatory practices.  42 U.S.C. § 12203(a).  This section does not contain its own remedy provision.  Id. at § 12203(c).  Instead, the statute references three other sections in the ADA as providing remedies for an aggrieved plaintiff, stating as follows:

(c) Remedies and procedures

> The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of [the antiretaliation provision] with respect to subchapter I, subchapter II and subchapter III of [the ADA], respectively.

Id. Here, Plaintiff's claim is rooted in subchapter I of the ADA, which governs all claims related to employment discrimination.  Id. at Ch. 126, Subch. I.  Therefore, Plaintiff may pursue any remedy available under § 12117, which corresponds with subchapter I in § 12203(c).

Unfortunately, § 12117 also does not contain a specific list of available remedies. Instead, it continues to direct a plaintiff to other sections of the United States Code. This endeavor is further complicated because § 12117 includes several provisions that apply solely to the EEOC and the Attorney General, which are irrelevant to a plaintiff seeking to identify available remedies. It states:

> [The] remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the [Equal Employment Opportunity] Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

42 U.S.C. § 12117. When read through the eyes of a plaintiff seeking to uncover the remedies available to her, the only relevant part of the statute is as follows:

> [The] remedies . . . set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, or 2000e-9 of this title shall be the . . . remedies . . . this subchapter provides to . . . any person alleging discrimination on the basis of disability in violation of any provision of this chapter[.]

Id. (emphasis added).

Of the five sections referenced in § 12117, only § 2000e-5 includes remedies for employees who have suffered from an unlawful employment practice.[5]  Id. at § 2000e-5(g). Section 2000e-5 gives a court broad discretion to order any form of equitable relief when the court finds an employer has engaged in an unlawful employment practice. Id. However, the court does not enjoy the same discretion with monetary remedies. In fact, the only monetary

---

[5] § 2000e-4 allows for the creation of the EEOC. § 2000e-6 gives the Attorney General power to file a lawsuit to correct unlawful discriminatory practices and describes how those cases should proceed. § 2000e-8 details the way in which investigations into discriminatory practices should be conducted. § 2000e-9 sets forth the procedures for hearings that may take place during those investigations. None of these provisions discuss the remedies available to an employee who has experienced unlawful discrimination.

remedy mentioned in the statute is the issuance of back pay, and even this recovery is limited. Id. (stating that back pay may not accrue from a date more than two years prior to the filing of a charge with the EEOC).

After careful consideration, we conclude that recovery of punitive and compensatory damages should be allowed only where such recovery is included in the statute dictating the available remedies.  See National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers, 414 U.S. 453, 458 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies").  We are not persuaded by the reasoning of other circuits that have permitted the recovery of these damages in retaliation cases.  See, e.g., Edwards v. Brookhaven Sci. Assocs., LLC, 390 F. Supp. 2d 225, 236 (E.D.N.Y. 2005) (holding that a plaintiff pursuing an ADA retaliation claim may recover any remedy available for Title I claims, not just those found in § 2000e-5); Kotewa v. Living Indep. Network Corp., 2007 WL 676681, at *4 (D. Idaho Mar. 1, 2007) (noting the purpose of the ADA was to make the victim "whole for injuries suffered on account of unlawful employment discrimination" to support its finding that compensatory damages available for ADA retaliation claim).  These cases tend to rely on "arguments grounded in legislative history, appellate court precedents and public policy." Baker v. PPL Corp., 2010 WL 419417, at *7 (M.D. Pa. Jan. 29, 2010).  Each of these cases includes a rejection from the court of the "literal meaning of the actual language used by Congress, along with the suggestion that Congress could not have meant what it appears to have said." Id. (citing Edwards, 390 F. Supp. 2d at 235-36).  We will not depart from the language Congress used in the statute, and therefore conclude that the language in the ADA does not permit the recovery of punitive or compensatory damages.

2.  <u>Whether the Civil Rights Act of 1991 Extends Compensatory and Punitive Damages to ADA Retaliation Claims.</u>

The Civil Rights Act of 1991 narrowly expanded the availability of compensatory and punitive damages for ADA claims.  42 U.S.C. § 1981a(a)(2).  "A close reading of the plain language of § 1981a(a)(2) makes it clear that the statute does not contemplate compensatory and punitive damages for a retaliation claim under the ADA."  <u>Baker</u>, 2010 WL 419417 at *7 (quoting <u>Kramer</u>, 355 F.3d at 965).  Section 1981a(a)(2) only extends the availability of punitive and compensatory damages to two specific sections of the ADA—§§ 12112 and 12112(b)(5).  42 U.S.C. § 1981a(a)(2); <u>Kramer</u>, 355 F.3d at 965.  At no point in the Civil Rights of Act of 1991 does Congress ever mention the antiretaliation provision found at § 12203.  As Congress declined to expand the type of relief available for ADA antiretaliation claims, we will decline to do so as well.

Accordingly, Defendants' motion to dismiss the request for compensatory damages will be granted, and the requests for compensatory and punitive relief will be stricken pursuant to Federal Rule of Civil Procedure 12(f).  <u>See</u> <u>Hyman v. WM Fin. Svcs., Inc.</u>, 2008 WL 1924879, at *2 (D.N.J. Apr. 29, 2008) (finding that Rule 12(f) allows a court to strike portions of a pleading wherein a party requests relief to which he is not entitled).

**B.  The Purported "Hostile Work Environment" Claim**

Next, Defendants move to dismiss Count VII of the amended complaint, which they characterize as a hostile work environment claim.  (Defs.' Mot. ¶¶ 7-9.)  Defendants first assert that Plaintiff failed to exhaust her administrative remedies when she did not include a hostile work environment claim in her proceeding before the Pennsylvania Human Rights Commission ("PHRC").  (<u>Id.</u> at ¶ 8.)  In the alternative, Defendants argue that Plaintiff has not adequately pled facts to support a hostile work environment claim.  (<u>Id.</u> at ¶ 9.)  In response, Plaintiff offers

to stipulate that she is not pressing a hostile work environment claim at this time, despite the language used in her complaint.  (Pl.'s Resp., p. 5.)

Count VII is titled "Defendant Masonic Retaliation in Violation of the Pennsylvania Human Relations Act, 43 P.S. § 959, et seq."  Plaintiff uses the term "hostile work environment" to characterize the manner in which the defendants retaliated against her.  (Am. Compl. ¶¶ 84-87.)   Put differently, Plaintiff does not allege that Defendants created a "hostile work environment" or that she is entitled to relief on that ground.  Instead, she claims that she was treated in a hostile manner at work "in retaliation for her actual/perceived disability" in violation of the PHRA.  (Id. at ¶ 87.)   Therefore, we will deny Defendants' motion as to Count VII of the amended complaint because Plaintiff has not raised a hostile work environment claim.

### C.  FMLA Retaliation Claim

Defendants also move to dismiss Count VIII of Plaintiff's amended complaint, wherein Plaintiff alleges that Masonic retaliated against her by placing her on modified duty and calling her a "liability" because she took FMLA leave.  (Id. at ¶¶ 92-93.)  Defendants contend that Plaintiff has not alleged sufficient facts to support her contention pursuant to the pleading standards set forth in Twombly and Iqbal.  We agree.

In order to state a claim for retaliation under the FMLA, a complaint must contain facts that plausibly suggest that the plaintiff 1) took FMLA leave; 2) suffered an adverse employment decision; and 3) that the adverse decision was causally related to the leave.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).  An adverse employment action is an action that a reasonable employee would have found to be materially adverse, "such that the action well might have dissuaded a reasonable worker from taking a protected action."  Kasper v. Cnty. of Bucks, 514 Fed. Appx. 210, 216 (3d Cir. 2013) (quoting  Burlington N. & Santa Fe. Ry.

Co. v. White, 548 U.S. 53, 68 (2006)).  There are two ways that a court may infer causation. Abramson v. William Paterson College of N.J., 260 F.3d 265, 288 (3d Cir. 2001).  First, courts should look at the timing of the adverse employment action.  Id.  If it occurred immediately following the plaintiff's return from FMLA-sanctioned leave, a court may infer a causal connection.  Id.  Second, a court may infer causation where an employer engages in a continuous pattern of antagonism between the time an employee returns from FMLA leave and the time she is finally terminated.  Id.

Here, it is uncontested that Plaintiff took FMLA leave.  Plaintiff has also pled sufficient facts to support her assertion that she was placed on restricted duty; however, her claim fails on the issue of causation.[6]  Plaintiff suggests that Masonic placed her on the restricted duty list immediately after returning from FMLA leave.  However, she also readily concedes that her own physician "returned her to work with a restriction that she was not to lift/carry more than 11-25 [pounds]." (Am. Compl. ¶ 26.)  When Plaintiff's back problems persisted, it was once again Plaintiff's own doctor who restricted her lifting to six to ten pounds.  Masonic adopted these recommendations.  (Id. at ¶¶ 27, 35.)  Because Defendants were simply following the recommendation of Plaintiff's own doctors in placing her on restricted duty, we cannot find that this action was made in retaliation for Plaintiff's FMLA leave.

Absent her doctor's recommendations, Plaintiff may have a colorable claim because she was placed on the modified duty list immediately after returning from FMLA leave.  However, the plaintiff has failed to plead facts that discount a more natural and innocuous explanation for the events that have given rise to a claim.  See Twombly, 550 U.S. at 568 (showing of parallel

---

[6] Because Plaintiff fails to plead sufficient facts to demonstrate causation, we need not reach the question of whether an employee has been subjected to an adverse employment action when she is placed on restricted duty at her doctor's request.

conduct between defendants was insufficient to show an antitrust conspiracy when an alternative explanation about market forces was "more natural"). Here, Plaintiff has not pled sufficient facts to overcome the likelihood that she was placed on restricted duty at her doctor's request, not as retaliation for taking FMLA leave. Therefore, the motion to dismiss Count VIII will be granted.

### D. John Doe Claim

Next, Defendants move to dismiss Count XI (PHRA claim) of the amended complaint for failing to state a claim upon which relief may be granted. Masonic advances two arguments in support of the motion. First, it argues that Plaintiff has failed to exhaust her administrative remedies as to the John Doe Defendants. In the alternative, Masonic argues that even if Plaintiff has exhausted her administrative remedies, she has failed to meet the pleading standards of Twombly and Iqbal with regard to these Defendants. (Defs.' Mot. ¶¶ 16- 17.)

Count XI alleges that Defendant Kristen Deck and "John Does 1-5" aided and abetted Masonic in retaliating against Plaintiff. (Am. Compl. ¶¶ 97-104.) John Does 1-5 are characterized as "employees of Defendant Masonic" who "knew, or had reason to know [of] the actions and inaction alleged [in the amended complaint], and/or personally participated in some of said actions, and is [sic] ultimately responsible for same." (Id. at ¶¶ 99, 102.) For reasons set forth below, we will deny the motion to the extent that Defendants allege Plaintiff has failed to exhaust her administrative remedies. However, we agree that Count XI should be dismissed for failing to plead facts that describe any of the John Does' roles in her alleged discrimination.

1. Whether Plaintiff Failed to Exhaust Her Administrative Remedies.

Generally, every defendant in an employment discrimination action must be named in the antecedent administrative complaint. Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh, Pa., 903 F.2d 243, 251-52 (3d Cir. 1990). This serves a twofold purpose. Glus v. G.

C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977).  First, the administrative complaint provides notice to the defendants that they are being charged with discrimination.  Second, it gives the accused party the opportunity to avoid litigation and voluntarily comply with the administrative agency.  However, this rule is not absolute.  Under certain circumstances, the civil complaint may contain more parties than were included in the administrative complaint.  Id.  In Glus v. G. C. Murphy Co., 562 F.2d 880 (3d Cir. 1977), the Third Circuit identified four factors that district courts should consider when a defendant is a party to a civil action but was not included in the administrative complaint.  It stated:

> [f]actors which we believe the district court should look to are 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar [to] the unnamed party's [interests] that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and] 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Id. at 888.

Here, Defendants urge the Court to dismiss Claim XI because Plaintiff did not sufficiently identify the John Doe Defendants in her administrative complaint.  This request is premature.  The purpose of fictitiously-named defendants is to act as placeholders "with the expectation of later finding the responsible culprits and substituting them as parties."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1488 (3d Cir. 1990).  Therefore, a plaintiff should generally be given the benefit of discovery to properly identify the John Doe defendants.  Atl. Used Auto Parts v. City of Philadelphia, 957 F. Supp. 622, 625 (E.D. Pa. 1997) (quoting Klingler v. Yamaha Motor Corp., U.S.A., 738 F. Supp. 898, 910 (E.D. Pa. 1990)) (noting that John Doe

defendants may remain "at least until reasonable discovery permits the actual defendants to assume their places").

At this early stage of the proceedings, a plaintiff's inability to identify a defendant in her administrative complaint does not automatically foreclose the possibility that the defendant may be added later, as <u>Glus</u> provides a framework to potentially add these defendants. We therefore disagree with Defendants' assertion that Count XI must be dismissed because the John Doe Defendants were not specifically identified in the administrative complaint.

    2.  <u>Whether Plaintiff Has Pled Sufficient Facts to Plausibly Suggest that John Does 1-5 Took Part in the Discrimination.</u>

Masonic's alternative argument, that Plaintiff has not pled sufficient facts to survive a motion to dismiss with regard to John Does 1-5, is more convincing. Claim XI fails to meet the <u>Twombly</u> and <u>Iqbal</u> pleading standards because it does not contain any facts that plausibly suggest that John Does 1-5 acted in concert with Masonic. Instead, Plaintiff simply states that John Does 1-5 participated in her discrimination and in doing so "aided and abetted the illegal conduct of Defendant Masonic." (Am. Compl. ¶ 99.) Plaintiff offers no explanation of <u>how</u> these Defendants' actions constituted aiding and abetting, or what role these Defendants may have played in the decisions leading to her termination. These allegations are an insufficient "threadbare recital[ ] of a cause of action's elements, supported by mere conclusory statements." <u>Iqbal</u>, 556 U.S. at 663. Therefore, we will dismiss Defendants "John Doe 1-5" from this action.

## IV.  **CONCLUSION**

Plaintiff has alleged nine counts of discrimination against Defendants, and Defendants have moved to dismiss three of these claims and Count V's request for compensatory and punitive damages. We find that compensatory and punitive damages are not available remedies for an ADA retaliation claim. Therefore, the motion to dismiss those damages from Claim V is

granted.  Defendants' motion to dismiss Claim VII is denied because Plaintiff has stipulated, and we further find, that Claim VII does not seek to assert a hostile work environment claim.  The motion to dismiss Claim VIII is granted because Plaintiff has not pled facts that plausibly suggest Defendants placed her on restricted duty for any reason other than her own doctor's orders.   Finally, Claim XI is dismissed for failing to plead facts that plausibly suggest Defendants John Doe 1-5 took any discriminatory actions.

Our Order follows.